UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

**BRANDON CALLIER,**

                    **Plaintiff,**

                v.

**CAST CAPITAL FUNDING CORP,** a New Jersey Corporation and **VADIM LEYBEL**

                    **Defendant.**

EP-23-cv-00365-KC

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant CAST CAPITAL FUNDING CORP ("Cast Capital") is a corporation organized and existing under the laws of New York and can be served via corporate officer Vadim Leybel, 15 Cedarwood Lane, Saddle River, New Jersey 07458.

3. Defendant VADIM LEYBEL is a natural person, resident of New Jersey, personally participated in the calls alleged herein and can be served at 15 Cedarwood Lane, Saddle River, New Jersey 07458.

**JURISDICTION AND VENUE**

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5.     This Court has specific personal jurisdiction over Defendants because Defendants intentionally availed themselves of the state of Texas by intentionally spoofing their caller IDs to reflect Texas area codes, and purposefully directed calls into Texas, and purposefully directed those phone calls be made with spoofed caller identification.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Defendants is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

7.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20.     Plaintiff personally and successfully registered his phone number ending in 4604 to the

National Do-Not-Call Registry ("DNC") in December 2007.

22. Defendant Cast Capital offers business loans and Merchant Cash Advances.

22. Plaintiff received at least eighteen (18) unauthorized calls to his personal cell phone ending in 4604 from Defendant Cast Capital from September 6, 2023, to September 28, 2023, soliciting business funding.

23. Each of the phone calls received by Plaintiff came from a spoofed phone number beginning 915-206. The phone calls were spoofed in order to trick Plaintiff, and other consumers, into believing the phone calls were local in nature.

24. Each of the phone calls received by Plaintiff with spoofed caller identification was made with auto-dialing spoofing technology. The auto dialing spoofing technology is a robocall under the Telephone Consumer Protection Act.

25. On September 6, 2023, Plaintiff received a phone number displaying 915-206-8751 on the caller identification. Plaintiff answered the phone and was solicited for business funding. Plaintiff responded with, "I'm not interested. Please don't call back."

26. On September 12, 2023, Plaintiff received a phone number displaying 915-206-5193 on the caller identification. Plaintiff answered the phone and was solicited for business funding. Plaintiff responded with, "I'm not interested. Please don't call back."

27. On September 13, 2023, Plaintiff received a phone number displaying 915-206-2841 on the caller identification. Plaintiff answered the phone and was solicited for business funding. Plaintiff responded with, "I'm not interested. Please don't call back."

28. On September 15, 2023, Plaintiff received a phone number displaying 915-206-2023 on the caller identification. Plaintiff answered the phone and was solicited for business funding. Plaintiff responded with, "I'm not interested. Please don't call back."

29.     Plaintiff has outlined each of the phone calls in TabOn September 21, 2023, at 9:19 AM Plaintiff received a phone call that displayed 915-206-6882 on the caller identification. Plaintiff answered the phone because the caller identification said the phone call was from "FEDEX." However, when Plaintiff answered the phone it was not FEDEX, but instead was Defendant Cast Capital.

30.     Plaintiff was annoyed at having received so many phone spoofed phone calls and having his do-not-call requests ignored, so Plaintiff played along to discover who was spoofing these phone calls.

31.     Plaintiff was connected to "Dylan" who sent Plaintiff an application from the email address dylan@castcapitalteam.com,

32.     On September 21, 2023, Plaintiff received a phone call from phone number 915-206-6780.  Plaintiff's caller identification displayed "STATE OF TEXAS."  Plaintiff understandably answered the phone because Plaintiff thought it was an important phone call from a state government official.

33.     When Plaintiff answered the phone he was not connected to a Texas State official, but was instead connected to "Jennifer" from Defendant Cast Capital.

34.     Jennifer sent Plaintiff an application from the email address Jenn@castcapitalteam.com.

35.     On September 27, 2023, Plaintiff received a phone call that displayed 915-206-1625 on the caller identification. Plaintiff answered the phone and was connected to an offshore telemarketer who improperly identified herself as calling from "US Funding" and then solicited Plaintiff for business funding. During the phone call the telemarketer informed Plaintiff that she and her telemarketing company were located in the Philippines.

36.     The telemarketer in paragraph 35 then live transferred Plaintiff to a representative from

Cast Capital. However, the phone call dropped.

37. On September 28, 2023, the same telemarketer called Plaintiff with 915-206-4604 displayed on the caller identification. Plaintiff answered the phone and the telemarketer said she was with "US Funding." Plaintiff asked, "If you're from US Funding, why did you transfer me to Cast Capital?" The telemarketer responded by saying "We are the call center. We work for Cast Capital." The telemarketer then live transferred Plaintiff to a representative from Cast Capital.

38. Each and every call at issue in this Complaint is a solicitation call marketing business funding.

39. Table A shows the calls sent to Plaintiff by Defendant Cast Capital.

TABLE A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 09/06/2023 | 2:01 PM | 915-206-8751 | Do Not Call Request |
| 2. | 09/11/2023 | 12:10 PM | 915-206-9726 | GOODE, BRENDA on caller ID |
| 3. | 09/12/2023 | 1:51 PM | 915-206-5193 | Do Not Call Request |
| 4. | 09/13/2023 | 12:39 PM | 915-206-2041 | Do Not Call Request |
| 5. | 09/15/2023 | 8:13 AM | 915-206-2023 | Do Not Call Request |
| 6. | 09/19/2023 | 3:06 PM | 915-206-3996 | |
| 7. | 09/20/2023 | 4:01 PM | 915-206-7896 | Do Not Call Request |
| 8. | 09/21/2023 | 7:19 AM | 915-206-1779 | |

| 9. | 09/21/2023 | 7:42 AM | 915-206-2805 | AGILITI on caller ID |
| 10. | 09/21/2023 | 8:10 AM | 915-206-3940 | MVT SERVICES on caller ID |
| 11. | 09/21/2023 | 8:26 AM | 915-206-1884 | |
| 12. | 09/21/2023 | 8:42 AM | 915-206-7271 | TREJO. EMMANUEL on caller ID |
| 13. | 09/21/2023 | 9:15 AM | 915-206-6882 | FEDEX displayed on caller identification. |
| 14. | 09/21/2023 | 9:37 AM | 915-206-6780 | STATE OF TEXAS displayed on caller identification |
| 15. | 09/27/2023 | 11:47 AM | 915-206-1625 | The telemarketer said they were located in the Philippines |
| 16. | 09/27/2023 | 12:07 PM | 915-206-5826 | |
| 17. | 9/28/2023 | 8:48 AM | 915-206-4604 | Agent live transferred me to a Cast Capital agent |
| 18. | 09/28/2023 | 8:54 AM | 915-206-6922 | |

40. Plaintiff did not have a preexisting relationship with Defendants, had never been a customer of Defendants nor had ever applied for solar panels or any other accounts with Defendants.

41. Defendants placed multiple unauthorized phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

42. Spoofing caller identification is a Deceptive Trade Practice Under Texas Law.

43. No provision of the Telephone Consumer Protection Act or any Texas Law permits the spoofing of caller identification.

44. On September 25, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not find any registration for any of the Defendants.

45. Each of the phone calls alleged herein was made without a valid Texas telephone solicitation registration.

46. No emergency necessitated any of the alleged calls.

47. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## TEXAS BUSINESS AND COMMERCE CODE 302.101

48. Defendant Cast Capital initiated the phone calls alleged herein and is a "seller" under the Texas Business and Commerce Code ("TBCC") because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

49. Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation."

50. The actions of Defendant Cast Capital violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

51. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

52. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

53. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

54. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101

## PERSONAL LIABILITY OF DEFENDANT LEYBEL

55. Defendant Leybel is personally participated in the calls at issue because Defendant Leybel personally directed the phone calls to be sent to Texas residents with Texas area codes.

56. Defendant Leybel is the principal officer of Defendant Cast Capital.

57. Defendant Leybel closely holds Defendant Cast Capital and is intimately involved in all decision-making and legal activities of Defendant Cast Capital.

58. Defendant Leybel has direct and personal involvement in and ultimate control over every aspect of Defendant Cast Capital's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

59. Defendant Leybel at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint,

60. There is precedent in the Western District for holding corporate officers personally liable

when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)
>
> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)
>
> Quoting Texas v. American Blastfax:
>
> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

11

61. The Same Court held that corporate officers were also personally liable for DTPA violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

62. Defendant Leybel is the manager and owner of Defendant Cast Capital and controls the day-to-day operations of Cast Capital and directed his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

63. Defendant Leybel is not merely a bystander. He is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

64. Defendant Leybel is well aware his conduct violated the TCPA and refused to alter the behavior. Defendant Leybel is the principal director and officer of Defendant Cast Capital and the only person with the power to make unlawful, fraudulent, and unethical behavior stop

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

65. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

66. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

67. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

68.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

69.     The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## COUNT ONE:
## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))
## (Against All Defendants)

70.     Plaintiff realleges and incorporates the preceding paragraphs 1-69 as if fully set forth herein.

71.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

72.     Defendants and/or their agents, called Plaintiff's private residential telephone which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days

prior to the alleged calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

73. Plaintiff was statutorily damaged at least eighteen (18) times under 47 U.S.C. § 227(c)(3)(F) by Defendant's calls described above, in the amount of $500 per call.

74. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

75. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:
### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))
### (Against All Defendants)

76. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-69.

77. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent

78. Plaintiff was statutorily damaged at least eighteen (18) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

79. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

80. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction

prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party

## COUNT THREE:
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (Against All Defendants)

81.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-66.

82.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

83.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

84.     Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.	A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.	An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.	An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants for eighteen (18) calls;

E.	An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against Defendants for eighteen (18) calls;

F.	An award of $5,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 302.101 for eighteen (18) calls;

G.	An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.	An award to Mr. Callier of interest, and costs, as allowed by law and equity;

I.	Such further relief as the Court deems necessary, just, and proper;


September 25, 2023,

　　　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brandon Callier*
　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　Brandon Callier
　　　　　　　　　　　　　　　　　　　　　　　　　Plaintiff, Pro Se
　　　　　　　　　　　　　　　　　　　　　　　　　6336 Franklin Trail
　　　　　　　　　　　　　　　　　　　　　　　　　El Paso, TX 79912
　　　　　　　　　　　　　　　　　　　　　　　　　915-383-4604
　　　　　　　　　　　　　　　　　　　　　　　　　Callier74@gmail.com